■ SUMITOMO BANK OF NEW YORK TRUST COMPANY, Appellant-Respondent, v TOWN OF NORTH HEMPSTEAD et al., Respondents-Appellants. [717 NYS2d 363] —In an action, *inter alia*, to recover damages for breach of contract, the plaintiff appeals, on the ground of inadequacy, and the defendants cross-appeal from a judgment of the Supreme Court, Nassau County (Martin, J.), entered December 28, 1999, which, upon a jury verdict, is in favor of the plaintiff and against the defendants in the total sum of $28,377,819.48.

Ordered that the judgment is affirmed, without costs or disbursements.

In 1992 the Town of Babylon (hereinafter Babylon), the Town of North Hempstead (hereinafter North Hempstead), and the Town of North Hempstead Solid Waste Management Authority (hereinafter the Authority) entered into an agreement whereby North Hempstead's solid waste would be transferred to Babylon for processing. Pursuant to a separate operation agreement, Babylon hired a private company, North Hempstead Resources, Inc. (hereinafter NHRI), to redesign and operate a transfer station where the solid waste was to be stored until it was transported to various disposal sites. NHRI sought funding in the private bond market, and on November 3, 1992, entered into a trust indenture agreement with the plaintiff, Sumitomo Bank of New York Trust Company (hereinafter Sumitomo), to borrow $16.9 million in 20-year notes at 11% interest. On the same day, Babylon, North Hempstead, and the Authority entered into a consent agreement whereby they agreed to make certain payments directly to Sumitomo as security for NHRI's debt.

In January 1994 North Hempstead and the Authority terminated NHRI's contract to operate the transfer station. In August 1994 Sumitomo commenced this action on behalf of the noteholders against North Hempstead, the Authority, and several other parties who have since been dismissed from the lawsuit, to recover damages, *inter alia*, for breach of contract. After a trial on the issue of liability, the jury found that North Hempstead and the Authority had good cause to terminate the operation agreement but failed to fulfill their contractual obligation under the consent agreement to make a good faith effort to find a replacement operator for the transfer station. The trial court interpreted the relevant contract provisions and determined the question of damages as a matter of law.

Contrary to the defendants' contention, the trial court properly determined that the clear and unambiguous language of paragraph 5 of the consent agreement required them to make a good faith effort to find a replacement for NHRI. It is well settled that the interpretation of an unambiguous contract is a function for the court and matters extrinsic to the agreement may not be considered when the parties' intent can be gleaned from the face of the instrument (*see, Teitelbaum Holdings v Gold,* 48 NY2d 51, 56).

Similarly, the trial court properly determined that the liquidated damages provision in the consent agreement prevailed over the liquidated damages provision in the operation agreement. In fact, paragraph 20 of the consent agreement expressly provided that any inconsistencies or conflicts between the

terms of the consent agreement and the related agreements, including the operation agreement, must be resolved in favor of the consent agreement. Similarly, the trial court properly determined that the specific definition of liquidated damages set forth in paragraph 15 of the consent agreement prevailed over the general definition in paragraph 11 of the same agreement (see, Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 46).

The defendants' remaining contentions regarding the trial court's evidentiary rulings, jury instructions, and calculation of damages are without merit or do not warrant reversal. Sumitomo's contention that the damage award is inadequate is also without merit. Bracken, J. P., Altman, Friedmann and Krausman, JJ., concur.